ChieF Justice Roberts,
with whom Justice Scalia, Justice Thomas, and Justice Alito join,
dissenting.
The plurality and the opinion concurring in the judgment agree on very little except the judgment. I on the other hand agree with much of each opinion, but disagree on the judgment. I agree with the concurrence that the sentence imposed under a Rule 11(c)(1)(C) plea agreement is based on the agreement, not the Sentencing Guidelines. I would, however, adhere to that logic regardless whether the agreement could be said to “use” or “employ” a Guidelines range in arriving at the particular sentence specified in the agreement. Ante, at 534 (opinion of Sotomayor, J.). In that respect I agree with the plurality that the approach of the concurrence to determining when a Rule 11(c)(1)(C) sentence may be reduced is arbitrary and unworkable. Ante, at 532-534.
Section 3582(c)(2) provides that “in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission,” a district court “may reduce the term of imprisonment... if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.” The lone issue here is whether petitioner William Freeman meets the initial prerequisite of having been sentenced to a term of imprisonment “based on” a subsequently reduced sentencing range.
I agree with Justice Sotomayor that “the term of imprisonment imposed pursuant to a (C) agreement is, for purposes of § 3582(c)(2), ‘based on’ the agreement itself.” Ante, at 536. In this case, Freeman executed a written plea agreement in which the parties “agree[d] that a sentence of 106 *545 months’ incarceration [was] the appropriate disposition.” App. 26a. Because the plea agreement was entered pursuant to Rule 11(c)(1)(C), that proposed sentence became binding on the District Court once it accepted the agreement. See Fed. Rule Crim. Proc. 11(c)(1)(C) (the parties’ “request” for “a specific sentence” “binds the court once the court accepts the plea agreement”). As a result, when determining the sentence to impose on Freeman, the District Court needed to consult one thing and one thing only — the plea agreement. See ante, at 536-536 (opinion of Sotomayor, J.) (“At the moment of sentencing, the court simply implements the terms of the agreement it has already accepted”).
I also agree with Justice Sotomayor that the “term of imprisonment imposed by the sentencing judge is dictated by the terms of the agreement entered into by the parties, not the judge’s Guidelines calculation,” and that “[allowing district courts later to reduce a term of imprisonment simply because the court itself considered the Guidelines in deciding whether to accept the agreement would transform § 3582(c)(2) into a mechanism by which courts could rewrite the terms of (C) agreements in ways not contemplated by the parties.” Ante, at 536-537.
But then comes the 0. Henry twist: After cogently explaining why a Rule 11(c)(1)(C) sentence is based on the plea agreement, Justice Sotomayor diverges from that straightforward conclusion and holds that Freeman nevertheless satisfies the threshold requirement in § 3582(c)(2). According to her opinion, if a Rule 11(c)(1)(C) “agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment” — or if such use is “evident from the agreement” — then the defendant’s “term of imprisonment is ‘based on’ the range employed and the defendant is eligible for sentence reduction under § 3582(c)(2).” Ante, at 534, 539. This exception is in my view as mistaken as the position of the plurality — and basically for the same reasons.
*546 Justice Sotomayor begins the departure from her own rule innocently enough. As she explains, “some (C) agreements may call for the defendant to be sentenced within a particular Guidelines sentencing range.” Ante, at 538. In such a case, according to Justice Sotomayor, there can be “no doubt” that the prison term the court imposes is “based on” the agreed-upon sentencing range, and therefore the defendant is eligible for sentence reduction. Ibid.
Whether or not that is true, it provides no support for the next step:
“Similarly, a plea agreement might provide for a specific term of imprisonment — such as a number of months — but also make clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty. As long as that sentencing range is evident from the agreement itself... the term of imprisonment imposed by the court in accordance with that agreement is ‘based on' that range.” Ante, at 539.
This category of cases is not “similar” to the first at all. It is one thing to say that a sentence imposed pursuant to an agreement expressly providing that the court will sentence the defendant within an applicable Guidelines range is “based on” that range. It is quite another to conclude that an agreement providing for a specific term is “similarly” based on a Guidelines range, simply because the specified term can be said to reflect that range.
According to the concurrence, if the parties simply “con-sidere] the Guidelines” or “negotiate ... by reference” to them, the defendant is not eligible for a sentence reduction. Ante, at 537. If, however, the agreement sets forth a specific term but it is somehow “clear that the basis for the specified term is a Guidelines sentencing range,” then the defendant is eligible for a sentence reduction. Ante, at 539. This head-scratching distinction between negotiating by refer *547 ence to the Guidelines and using them as a basis for the specified term makes for an unworkable test that can yield only arbitrary results.
The confusion is compounded by the varying standards in the concurrence. Sometimes the test is whether an agreement "expressly uses” a Guidelines sentencing range, ante, at 534, 539; see ante, at 540 (“explicitly employs”). Other times the test is whether such use is “evident,” ante, at 539, 542; see ante, at 543, n. 9 (“clear”). A third option is whether the agreement “indicate[s] the parties’ intent to base the term of imprisonment on a particular Guidelines range.” Ante, at 540, n. 5 (emphasis added).
The error in the concurring opinion is largely attributable to a mistaken shift in analysis. In the first half of the opinion, the inquiry properly looks to what the judge does: He is, after all, the one who imposes the sentence. After approving the agreement, the judge considers only the fixed term in the agreement, so the sentence he actually imposes is not “based on” the Guidelines.
In the second half of the opinion, however, the analysis suddenly shifts, and focuses on the parties: Did they “use” or “employ” the Guidelines in arriving at the term in their agreement? But § 3582(c)(2) is concerned only with whether a defendant “has been sentenced to a term of imprisonment based on a sentencing range.” (Emphasis added.) Only a court can sentence a defendant, so there is no basis for examining why the parties settled on a particular prison term.
This conclusion dovetails with United States Sentencing Commission, Guidelines Manual § lB1.10(b)(l) (Nov. 2010) (USSG) — the Sentencing Commission’s policy statement governing whether a defendant is eligible for a reduction under § 3582(c)(2). As we explained last Term, § 3582(c)(2) requires a district court “to follow the Commission’s instructions in § 1B1.10 to determine the prisoner’s eligibility for a sentence modification.” Dillon v. United States, 560 U. S. 817, 827 (2010). According to § lB1.10(b)(l), the court must *548 first determine “the amended guideline range that would have been applicable to the defendant” if the retroactively amended provision had been in effect at the time of his sentencing. “In making such determination, the court shall substitute only the amendments ... for the corresponding guideline provisions that were applied when the defendant was sentenced.” USSG § 1B1.10(b)(1), p. s. (emphasis added).
As noted, the District Court sentenced Freeman pursuant to the term specified by his plea agreement; it never “applied” a Guidelines provision in imposing his term of imprisonment. The fact that the court may have “use[d] the Guidelines as a yardstick in deciding whether to accept a (C) agreement does not mean that the term of imprisonment imposed by the court is ‘based on’ a particular Guidelines sentencing range.” Ante, at 536 (opinion of Sotomayor, J.). Even if the Guidelines were “used” or “employed” by the parties in arriving at the Rule 11(c)(1)(C) sentencing term, they were not “applied when the defendant was sentenced.” Once the District Court accepted the agreement, all that was later “applied” was the sentence set forth in that agreement.
Justice Sotomayor is wrong to assert that her standard “does not rewrite the plea agreement” but rather “enforces the agreement’s terms.” Ante, at 540. According to the concurrence, “[w]hen a (C) agreement explicitly employs a particular Guidelines sentencing range to establish the term of imprisonment, the agreement itself demonstrates the parties’ intent that the imposed term of imprisonment will be based on that range,” and therefore subject to reduction if the Commission subsequently lowers that range. Ibid. In this case, Justice Sotomayor concludes that Freeman’s agreement contemplated such a reduction, even though the parties had “agree[d] that a sentence of 106 months’ incarceration is the appropriate disposition of this case.” App. 26a.
There is, however, no indication whatever that the parties to the agreement contemplated the prospect of lowered sen *549 tencing ranges. And it is fanciful to suppose that the parties would have said “106 months” if what they really meant was “a sentence at the lowest end of the applicable Guidelines range.” Cf. id., at 25a (parties in this case recommending “a fine at the lowest end of the applicable Guideline Range”). In concluding otherwise, the concurrence “ignore[s] the agreement’s express terms.” Ante, at 540, n. 4.
The reality is that whenever the parties choose a fixed term, there is no way. of knowing what that sentence was “based on.” The prosecutor and the defendant could well have had quite different reasons for concluding that 106 months was a good deal. Perhaps the prosecutor wanted to devote the limited resources of his office to a different area of criminal activity, rather than try this case. Perhaps the defendant had reason to question the credibility of one of his key witnesses, and feared a longer sentence if the ease went to trial.
Indeed, the fact that there may be uncertainty about how to calculate the appropriate Guidelines range could be the basis for agreement on a fixed term in a plea under Rule 11(c)(1)(C). Here the agreement made clear that there was some doubt about the Guidelines calculations. See App. 28a (“Both parties reserve the right to object to the USSG §4A1.1 calculation of defendant’s criminal history”); ibid. (the parties acknowledge that their Guidelines calculations “are not binding upon the Court” and that the "defendant understands the Court will independently calculate the Guidelines at sentencing and defendant may not withdraw the plea of guilty solely because the Court does not agree with . . . [the] Sentencing Guideline application”).
In addition, parties frequently enter plea agreements that reflect prosecutorial decisions not to pursue particular counts. If a defendant faces three counts, and agrees to plead to one if the prosecutor does not pursue the other two, is the sentence reflected in the Rule 11(c)(1)(C) agreement in any sense “based on” the Guidelines sentencing range for the *550 one count to which the defendant pleaded? Surely not. The concurrence tacitly concedes as much when it suggests that an agreement to “drop[] a charge or forgot] a future charge” could ultimately be grounds for not reducing the defendant’s sentence. Ante, at 541, n. 6. But what this really shows is a basic flaw in the “based on” test adopted by that opinion.
Finally, Justice Sotomayor’s approach will foster confusion in an area in need of clarity. As noted, courts will be hard pressed to apply the distinction between referring to and relying on a Guidelines range. Other questions abound:
What if the agreement contains a particular Guidelines calculation but the agreement’s stipulated sentence is outside the parties’ predicted Guidelines range? The test in the concurring opinion is whether the agreement “uses” or “employs” a Guidelines sentencing range to establish the term of imprisonment, ante, at 534, not whether that term falls within the range. In this ease, what if the term was 53 months — exactly half the low end of the sentencing range anticipated by the parties? Is it “evident” in that ease that the Guidelines were used or employed to establish the agreed-upon sentence?*
What if the plea agreement does not contain any references to the Guidelines — not even the partial and tentative Guidelines calculations in Freeman’s agreement — but the binding sentence selected by the parties corresponds exactly to the low end of the applicable Guidelines range? Is it “evident” in that case that the agreement is based on a sentencing range?
What if the District Court calculates the applicable Guidelines range differently than the parties? This is no academic *551 hypothetical. See, e. g., United States v. Franklin, 600 F. 3d 893, 896-897 (CA7 2010) (noting that “the district court settled on a higher guidelines range than that contemplated in the [Rule 11(c)(1)(C)] plea agreement”). Is a Rule 11(c) (1)(C) sentence still subject to reduction if the parties relied on the wrong sentencing-range? Justice Sotomayor’s surprising answer is “yes,” see ante, at 542, n. 8, even though the governing Guidelines provision specifies that a defendant is only eligible for sentence reduction if the amended Guideline has “the effect of lowering the defendant’s applicable guideline range” — presumably the correct applicable guideline range. See USSG § lB1.10(a)(2)(B), p. s. Relying on error is just one unforeseen consequence of looking not to the specified term in a Rule 11(c)(1)(C) agreement, but instead trying to reconstruct what led the parties to agree to that term in the first place.
This confusion will invite the very thing Justice Soto-mayor claims to disavow: a “free-ranging search” by district courts “through the parties’ negotiating history in search of a Guidelines sentencing range that might have been relevant to the agreement.” Ante, at 538. This is particularly unfortunate given that the whole point of Rule 11(c)(1)(C) agreements is to provide the parties with certainty about sentencing.
* * *
As with any negotiation, parties entering a Rule 11(c) (1)(C) plea agreement must take the bitter with the sweet. Because of today’s decision, however, Freeman gets more sweet and the Government more bitter than either side bargained for. But those who will really be left with a sour taste after today’s decision are the lower courts charged with making sense of it going forward.
I respectfully dissent.

Justice Sotomayor responds that “[i]f the agreement itself made oloar” that the parties arrived at the 53-month figure by determining the sentencing range and then halving the range's low eud-'-lOG months — then the sentence could be reduced. Ante, at 543, n. 9. Does the 53-month fig we itself make that clew? What if the figure is 2GVí¡ muntlis?